UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NORRIS MARSTON and )
JONATHAN B. MARSTON, )
INTERVENOR, )
                                                  )
       Plaintiffs,                                )
    v.                                            )   CIVIL ACTION
                                                  )   NO. 10-10437-GAO
UNITED STATES OF AMERICA,       )
et al.,                                           )
                                                  )
       Defendants.                               )

**MEMORANDUM OF DECISION
AND ORDER ON MOTIONS TO ENFORCE
SETTLEMENT, TO REOPEN CASE AND TO QUASH**

March 6, 2012

DEIN, U.S.M.J.

## I. INTRODUCTION

This action arises from an accident that occurred on August 24, 2008, when the plaintiff, Norris Marston, was performing dismantling work at the Ambrose Light Tower located off the coast of New Jersey. The plaintiff claims that he sustained severe injuries, including a brain injury, when the boat landing he was working on gave way and drove him eighty feet below the surface of the ocean. By his First Amended Complaint, the plaintiff asserted claims in admiralty against the defendants, the United States of America, Hallum Marine Construction ("Hallum"), Costello Dismantling Company, Inc. ("Costello"), and Semper Diving and Marine Corp. ("Semper"). The defendants asserted

cross-claims against each other, and Hallum brought third-party claims for insurance coverage against Mark Sylvia Insurance Agency and Willis Group Holdings, a/k/a Willis of Massachusetts, Inc.

The matter is presently before the court on the defendants' motions to enforce a settlement (Docket Nos. 66, 67 and 71) and on the "Motion of Plaintiff, Intervenor, Jonathan B. Marston, to Reopen Case" (Docket No. 93). The fundamental issue raised by the parties' motions is whether Norris Marston entered into an enforceable settlement agreement with the defendants following a day-long mediation before Magistrate Judge Marianne B. Bowler on October 17, 2011. It is undisputed that during the mediation, the parties agreed to the terms of a settlement, which was memorialized in open court. Nevertheless, the Intervenor[1] contends that the settlement is unenforceable, and the case must be reopened, because Norris Marston lacked the mental capacity to enter into a settlement agreement at the time of the mediation.

Following a status conference on January 18, 2012, this court took under advisement the Intervenor's claim, which was raised in his motion to reopen, that no member of this court would be able to resolve the parties' settlement dispute in an impartial or unbiased manner in light of comments that Magistrate Judge Bowler allegedly made regarding the credibility of Norris Marston's incapacity claim.

---

[1] On December 21, 2011, this court allowed Jonathan Marston, the plaintiff's conservator, to intervene for the limited purpose of addressing whether Norris Marston was competent to enter into a settlement agreement on October 17, 2011.

This court also allowed the parties to file supplemental materials aimed at establishing whether the Intervenor could present sufficient evidence of Norris Marston's mental incapacity to warrant an evidentiary hearing on that matter, and clarifying the issues that would need to be decided by this court in connection with the motions to enforce and to reopen. Among the supplemental materials that have been filed by the parties since the status conference is defendant Costello's "Motion to Quash Plaintiff's Supplemental Memorandum and Affidavit of Jay J. Isaac, M.D." (Docket No. 105). By its motion, Costello is seeking to quash the Intervenor's supplemental memorandum describing the scope of the plaintiff's incapacity claim, as well as the Affidavit of Norris Marston's treating physician, Dr. Jay J. Isaac. Alternatively, Costello requests that it be granted permission to cross-examine Dr. Isaac regarding the matters addressed in his Affidavit.

After consideration of the parties' written submissions, as well as the arguments made by their counsel at the January 18, 2012 status conference, this court concludes, as an initial matter, that there is no reasonable basis for questioning my impartiality in this case. Therefore, the Intervenor's suggestion that I recuse myself from adjudicating the parties' settlement dispute is DENIED. This court also concludes, for the reasons detailed below, that the Intervenor has presented sufficient evidence of mental incapacity to require an evidentiary hearing as to whether Norris Marston, by reason of a mental illness, (1) was unable to understand in a reasonable manner the nature and consequences of the settlement between the parties on October 17, 2011, or (2) was unable at that time to act in a reasonable manner in relation to the settlement, and the defendants had reason

to know of his condition.  With respect to Costello's motion to quash, the motion is ALLOWED IN PART and DENIED IN PART.  Specifically, the motion is denied to the extent that Costello is seeking to quash the Intervenor's supplemental materials.  However, Costello shall have an opportunity to cross-examine Dr. Isaac in connection with the evidentiary hearing before this court.

## II. DISCUSSION

### A. Recusal

A threshold issue in this case is whether I must recuse myself from hearing and resolving the parties' settlement dispute.  In his motion to reopen, the Intervenor argues that during a status conference on November 29, 2011,[2] Magistrate Judge Bowler made comments about her confidential communications with the plaintiff and questioned the credibility of Norris Marston's claim that he lacked the mental capacity to enter into a settlement agreement on October 17, 2011.  Because Magistrate Judge Bowler's statements were made in open court and are part of the record in this case, the Intervenor "questions whether any fellow judge and/or colleague of hers in the District Court, with knowledge of this record, can hear evidence in this proceeding, and/or adjudicate the issues, in a disinterested and unbiased manner."  (Pl. Mot. (Docket No. 93) at 2).  After careful consideration of the Intervenor's argument, I find that Magistrate Judge Bowler's

---

[2] Although the Intervenor states that the status conference took place on December 2, 2011, the docket sheet in this matter indicates that the conference actually occurred on November 29, 2011.  (See Docket Entry dated 11/29/2011).

conduct does not provide a reasonable basis for doubting my impartiality, and that it would not be appropriate for me to recuse myself from this matter.

28 U.S.C. § 455(a) provides in relevant part that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." "The reach of [§ 455(a)] is broad. It forbids partiality whether grounded in an 'interest or relationship' or a 'bias or prejudice'; and it forbids not only the reality of partiality but its objective appearance as well." United States v. Snyder, 235 F.3d 42, 45 (1st Cir. 2000) (quoting Liteky v. United States, 510 U.S. 540, 548, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994)).

"Nevertheless, judges are not to recuse themselves lightly under § 455(a)." Id. Disqualification is appropriate "only when the charge is supported by a factual basis, and when the facts asserted 'provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality.'" In re Boston's Children First, 244 F.3d 164, 167 (1st Cir. 2001) (quoting In re United States, 666 F.3d 690, 695 (1st Cir. 1981)) (footnote omitted). Therefore, "'[t]he trial judge has a duty not to recuse himself or herself if there is no objective basis for recusal.'" Fideicomiso de la Tierra del Cano Martin Pena v. Fortuno, 631 F. Supp. 2d 134, 136 (D.P.R. 2009) (quoting In re United States, 441 F.3d 44, 67 (1st Cir. 2006)) (alteration in original).

In the instant case, the Intervenor has presented no objective, reasonable basis for doubting my impartiality or my ability to adjudicate this matter fairly. As an initial matter, I have not reviewed a transcript of the November 29, 2011 status conference

-5-

which took place before Magistrate Judge Bowler.  Although it may be part of the record in this case, I do not consider it relevant to the issues before me, and I do not intend to consider it.  Moreover, I am very cognizant of the fact that the evidence that has been and will be presented to me regarding Mr. Marston was not presented to Judge Bowler.  Any impression she may have had regarding his capacity is not binding on me in any way.  In addition, even if her comments were adverse to plaintiff's current position, "mere exposure to prejudicial information does not, in itself, establish the requisite factual basis'" for recusal.  United States v. Voccola, 99 F.3d 37, 42 (1st Cir. 1996) (quoting United States v. Giorgi, 840 F.2d 1022, 1035 (1st Cir. 1988)).  See also Liteky, 510 U.S. at 555, 114 S. Ct. at 1157 ("opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.").  Finally, I have examined my feelings and find that I have no concerns about my ability to be fair and impartial in this case.

Ultimately, "recusal requires 'more than subjective fears, unsupported accusations or unfounded surmise.'"  Fideicomiso de la Tierra del Cano Martin Pena, 631 F. Supp. 2d at 136 (quoting In re United States, 158 F.3d 26, 30 (1st Cir. 1998)).  Where, as here, there is no objective basis for recusal, disqualification would not be appropriate.

### B. Appropriateness and Scope of an Evidentiary Hearing

Another issue raised by the parties' motions is whether this court may resolve the question whether an enforceable settlement was reached without first taking evidence and resolving disputed issues of fact. For the reasons that follow, this court finds that the Intervenor has raised genuinely disputed issues of material fact on the issue of Norris Marston's mental capacity, and that, therefore, an evidentiary hearing is required under the applicable case law.

### Need for an Evidentiary Hearing

The court has "an inherent power to supervise and enforce settlement agreements entered into by parties to an action pending before the court." Dankese v. Defense Logistics Agency, 693 F.2d 13, 16 (1st Cir. 1982). "Thus, a party to a settlement agreement may seek to enforce the agreement's terms when the other party refuses to comply." Fid. & Guar. Ins. Co. v. Star Equip. Corp., 541 F.3d 1, 5 (1st Cir. 2008). However, "[a]s a general rule, a trial court may not summarily enforce a purported settlement agreement if there is a genuinely disputed question of material fact regarding the existence or terms of that agreement. In such circumstances, the cases consentingly hold that the court instead must take evidence to resolve the contested issues of fact." Malave v. Carney Hosp., 170 F.3d 217, 220 (1st Cir. 1999).

The record in this case demonstrates that there is a genuine dispute about the existence of an enforceable settlement. As described above, the Intervenor contends that

Norris Marston lacked the mental competence to enter into a settlement on October 17, 2011. In support of that claim, the Intervenor has submitted medical records pertaining to the treatment of the plaintiff during the period from September 1, 2008 through August 8, 2011. (See Affidavit of Keith L. Miller ("Miller Aff.") (Docket No. 97)). Those records indicate that Norris Marston has continued to suffer from cognitive difficulties since his accident in August 2008. (See, e.g., Miller Aff. at Ex. E at 32 and Ex. F at 7). Additionally, the Intervenor has filed the Affidavit of Jay J. Isaac, M.D., one of Norris Marston's treating physicians. Dr. Isaac has treated the plaintiff since about September 10, 2008, shortly after his accident. (Isaac Aff. ¶ 4).[3] In his Affidavit, Dr. Isaac describes Norris Marston's treatment for cognitive dysfunction arising from the accident, as well as the plaintiff's diagnoses of postconcussion syndrome and severe anoxic brain injury. (See id. ¶¶ 8, 12-15, 19). Significantly, Dr. Isaac also renders an opinion that on October 17, 2011, the day of the mediation, Norris Marston lacked the mental capacity "to comprehend the nature and quality of his agreement . . . together with an understanding of its significance and consequences." (Id. ¶¶ 21-22). Thus, the Intervenor has raised a substantial issue as to the existence of a binding agreement.

Under the law of this circuit, "[e]vidence supplied by one side to the dispute, especially nontestimonial evidence not subject to cross-examination," is insufficient to support resolution of a motion to enforce a settlement agreement without an evidentiary

---

[3] Dr. Isaac's Affidavit is attached to the Supplemental Memorandum in Support of Motion of Plaintiff/Intervenor, Jonathan B. Marston, to Reopen Case (Docket No. 102).

hearing.  Malave, 170 F.3d at 220.  Moreover, summary enforcement "ought to be reserved for situations in which a struck bargain is admitted or proved, and the basis for nonperformance is insubstantial."  Id. at 222.  Because the Intervenor has presented a significant basis for his request to reopen the case, this court must hold an evidentiary hearing and resolve issues of fact regarding Norris Marston's capacity to enter into the settlement agreement on October 17, 2011.

### Costello's Motion to Quash

As described above, defendant Costello has moved to quash Dr. Isaac's Affidavit, as well as a supplemental memorandum that was filed by the Intervenor following the January 18, 2012 status conference before this court.  For the reasons that follow, Costello's motion to quash is ALLOWED IN PART and DENIED IN PART.

By its motion, Costello argues that it has been prejudiced because the Intervenor changed his theory in support of his motion to reopen the case.  Specifically, Costello contends that in his original motion, the Intervenor argued that Norris Marston had the requisite mental capacity to understand the nature and consequences of entering into the settlement on October 17, 2011, but that he nevertheless failed to comprehend that the terms of the settlement were unreasonable given his circumstances.  However, in his supplemental materials, the Intervenor changed his theory, and argued that Mr. Marston failed to understand the nature and consequences of the settlement.  Costello asserts that it has suffered undue prejudice because it relied on the Intervenor's original submission when it filed its opposition to the motion to reopen.  Accordingly, Costello moves that the

-9-

Intervenor's supplemental materials be quashed. In the alternative, Costello requests that if the court considers the supplemental materials, it provide Costello with an opportunity to cross-examine Dr. Isaac.

To the extent Costello is seeking to quash the Intervenor's supplemental materials, its motion is denied. During the status conference before this court on January 18, 2012, counsel for the plaintiff stated that he intended to establish that Norris Marston was unable to understand the nature and consequences of entering into the settlement agreement. Therefore, Costello was apprised of the fact that the Intervenor would be pursuing that theory. Moreover, this court specifically allowed the parties time to file supplemental materials, in part, so that the Intervenor could clarify the scope of Norris Marston's mental incapacity claim. As detailed below, the Intervenor has clarified that he is arguing both that Norris Marston failed to comprehend the nature and consequences of the settlement, and that a reasonably competent person in Norris Marston's position would not have agreed to its terms. The defendants will have a sufficient opportunity to address those claims in their entirety, and they have not been prejudiced. Accordingly, the court declines to quash the Intervenor's supplemental materials.

Costello's alternative request, that it be permitted an opportunity to cross-examine Dr. Isaac, is allowed. As detailed above, because the Intervenor has raised a genuine dispute of material fact regarding the existence of an enforceable settlement agreement, this court will hold an evidentiary hearing relating to Norris Marston's mental capacity. In connection with that process, the defendants will have an opportunity to cross-examine

Dr. Isaac and challenge his opinions. They will also have an opportunity to present their own evidence on the matters addressed in Dr. Isaac's Affidavit.

**Scope of the Hearing**

The parties assert that the issues bearing on whether an enforceable settlement was reached in this case should be defined by Massachusetts law on contractual incapacity, and in particular by the decision of the Supreme Judicial Court in Sparrow v. Demonico, 461 Mass. 322, 960 N.E.2d 296 (2012). However, Norris Marston's underlying claims in this action were brought pursuant to the court's admiralty jurisdiction and various federal statutes. (See First Am. Compl. (Docket No. 50) ¶¶ 9-13). Such claims are governed by federal rather than state law. See Fairest-Knight v. Marine World Distribs., Inc., 652 F.3d 94, 98 (1st Cir. 2011) (explaining that "[a]dmiralty jurisdiction brings with it a body of federal jurisprudence, largely uncodified, known as maritime law." (quotations and citation omitted)). Where, as here, the underlying claims are federal in nature, a motion to enforce a settlement agreement "is determined in accordance with federal law." Malave, 170 F.3d at 220. See also Mid-South Towing Co. v. Har-Win, Inc., 733 F.2d 386, 389 (5th Cir. 1984) ("Because the claims in this case are premised on federal general maritime law, we apply federal law to decide the validity of the agreement to settle the claims."). Therefore, it is appropriate for this court to look to federal law to determine what issues must be decided in connection with Mr. Marston's claim of incapacity.[4]

---

[4] Although federal law applies to the parties' settlement dispute, it appears that there is little if any difference between the federal law on contractual incapacity and the law in

Federal courts that have considered whether a party had the mental capacity to enter into a settlement have relied on the Restatement of Contracts to derive federal common law on the issue. See, e.g., Lopez v. Kempthorne, Civil Action No. H-07-1534, 2010 WL 4639046, at *3-4 (S.D. Tex. Nov. 5, 2010) (slip op.) (relying on Restatement in evaluating whether plaintiff was mentally incapacitated at the time she agreed to a settlement); Reid v. IBM Corp., No. 95 Civ. 1755 (MBM), 1997 WL 357969, at *7 (S.D.N.Y. Jun. 26, 1997) (relying on Restatement to determine whether plaintiff was suffering from a mental disability at the time he signed a release). The Restatement provides in relevant part that "[a] natural person who manifests assent to a transaction has full legal capacity to incur contractual duties thereby, unless he is . . . (c) mentally ill or defective . . . ." Restatement (Second) of Contracts ("Restatement") § 12(2). It further provides, with respect to the effect of mental illness on the capacity to contract, as follows:

> A person incurs only voidable contractual duties by entering into a transaction if by reason of mental illness or defect (a) he is unable to understand in a reasonable manner the nature and consequences of the transaction, or (b) he is unable to act in a reasonable manner in relation to the transaction and the other party has reason to know of his condition.

Id. § 15(1).[5]

---

Massachusetts, as articulated by the Supreme Judicial Court in Sparrow.

[5] The comments to § 15 of the Restatement provide guidance as to the type of evidence that may be relevant to proving incompetency.

Although the Intervenor relied on Massachusetts law in framing the issues to be decided by this court, it is clear from the Intervenor's supplemental memorandum that the plaintiff's claim of incapacity is based on both prongs of the test articulated in the Restatement. In particular, the Intervenor argues "that the record will show that on October 17, 2011, Norris Marston did not have the ability to comprehend the nature and quality of the purported settlement agreement, together with an understanding of its significance and consequences to him." (Supp. Mem. (Docket No. 102) at 2). He further contends that "given the clear indication of a serious and permanent brain injury in Mr. Marston's medical records, it cannot seriously be argued that . . . a reasonably competent person would have accepted such a settlement under Mr. Marston's circumstances." (Id. at 4). Furthermore, the Intervenor asserts that because the defendants had possession of Norris Marston's medical records on the day of the mediation, they had reason to know of his mental condition at the time of the settlement. (Id.). Therefore, the parties shall address both prongs of the test for contractual incapacity at the evidentiary hearing before this court.

### III. ORDER

For all the reasons detailed herein, it is hereby ORDERED as follows:

1. Because there is no reasonable basis for questioning my impartiality in this matter, the Intervenor's suggestion that I recuse myself from adjudicating the parties' settlement dispute is DENIED.

2. This court will hold an evidentiary hearing, which will address whether Norris Marston, by reason of a mental illness, (1) was unable to understand in a reasonable manner the nature and consequences of the settlement

between the parties on October 17, 2011, or (2) was unable at that time to act in a reasonable manner in relation to the settlement, and the defendants had reason to know of his condition.

3.  A status conference shall take place on **March 21, 2012 at 10:00 a.m.** in Courtroom #15 on the 5th floor. At that time, the parties shall be prepared to discuss (i) the scope of any discovery they wish to take to prepare for the evidentiary hearing, and (ii) a schedule for the completion of any such discovery.

4.  The parties shall submit a brief joint statement no later than five (5) business days before the status conference addressing the issues itemized in paragraph 3 above.

5.  Costello's "Motion to Quash Plaintiff's Supplemental Memorandum and Affidavit of Jay J. Isaac, M.D." (Docket No. 105) is ALLOWED IN PART and DENIED IN PART. Specifically, the motion is denied to the extent that it seeks to quash the plaintiff's supplemental materials. However, Costello shall have an opportunity to cross-examine Dr. Isaac in connection with the evidentiary hearing before this court.

    / s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge